## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAYMEE L. WALKER,** | : | **CIVIL ACTION NO. 1:11-CV-1223** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES W. GRUVER**, *et al.* | : | |
| | : | |
| **Defendants.** | : | |

-------------------------------------------------------------------------------

| | | |
|---|---|---|
| **ANNE M. HINKLE,** | : | **CIVIL ACTION NO. 1:11-CV-1224** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES W. GRUVER**, *et al.* | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

Plaintiffs Jaymee L. Walker ("Walker") and Anne M. Hinkle ("Hinkle")
brought the above-captioned actions against defendants James W. Gruver
("Gruver"), Thomas L. Ginnick ("Ginnick"), George Bauserman, Sr.
("Bauserman"), and Southampton Township (the "Township") for claims under 42
U.S.C. § 1983, Title VII of the Civil Rights Act of 1994 ("Title VII"), 42 U.S.C. § 2000
*et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. 951
*et seq.*, as well as claims of assault, battery, and intentional infliction of emotional

distress. (Doc. 74 ¶ 26).[1] Presently before the court is plaintiffs' petition (Doc. 74) for attorney's fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k). Defendants oppose the amount claimed, arguing that the hours plaintiffs' counsel billed and the rates at which they billed are excessive, and that several expenses are not recoverable. The motion has been fully briefed and is ripe for disposition. For the following reasons, the court will grant the motion in part and deny it in part.

## I.    Background

The underlying cases arose when plaintiffs alleged that defendant James Gruver, an elected official of Southampton Township, sexually assaulted and harassed the plaintiffs on several occasions. (Doc. 78 at 1). Gruver pleaded *nolo contendere* to two counts of indecent assault and two counts of harassment. (Id.) After exhausting administrative remedies and receiving "right to sue" letters from the Pennsylvania Human Relations Commission, plaintiffs filed separate complaints in June 2011 through the same attorneys for claims under Section 1983, Title VII, and the PHRA, as well as tort claims under Pennsylvania law. (Doc. 74 ¶ 26; Doc. 78 at 1-2). The parties then propounded and responded to discovery requests and interrogatories, and the parties also conducted nineteen depositions through July 2012. (Doc. 74 ¶ 5; Doc. 78 at 2 n.1). On September 24, 2012, defendants Ginnick,

---

[1] All references to the record refer to <u>Walker v. Gruver</u>, Civil Action No. 1:11-CV-1223. Although plaintiffs used the same attorneys to bring these claims against the same defendants and filed almost identical documents in both cases, the cases were never consolidated. (Doc. 74 ¶ 27; Doc. 78 at 2). However, the court has considered and will continue to consider both cases simultaneously.

Bauserman and the Township filed a motion for partial summary judgment. (Doc. 32). In anticipation of trial scheduled for March 2013, defendants filed two motions in limine (Docs. 42, 48) and a motion to bifurcate (Doc. 46) on November 15, 2012. The parties reached a settlement on or about December 16, 2012, in which plaintiffs agreed to a voluntary dismissal of defendants Ginnick and Bauserman (Doc. 66) and recovered a total of $450,000 from the remaining defendants. (Doc. 74 ¶ 31). The court terminated the outstanding motions in light of the settlement and ordered plaintiffs' counsel to file, and defendants' counsel to respond to, a petition for attorney's fees. (Doc. 72).

Richard P. Mislitsky, Esquire ("Mislitsky"), and Carol A. Redding, Esquire, and Patrick J. Redding, Esquire (the "Reddings"), from the Redding Law Office, LLP represent Ms. Walker and Ms. Hinkle in these cases. (Doc. 74 ¶ 10). Mr. Redding has practiced as a trial attorney for thirty-five years in both civil and criminal matters in Pennsylvania state courts, and Ms. Redding has practiced as a trial attorney for fifteen years, focusing on civil litigation in Pennsylvania state courts. (Id. ¶¶ 19-20). Although experienced litigators, the Reddings asked Mislitsky to serve as co-counsel primarily to develop and present these cases at trial. (Id. ¶ 10). Mislitsky has approximately thirty-five years of experience as a trial attorney and concentrates his practice in the area of medical malpractice in Pennsylvania state courts. (Id. ¶ 21).

These cases, including the fee petition before the court, span a time period of three years. During the course of these cases, plaintiffs' legal team billed a total of

3101.66 hours.  (Doc. 78 at 12; Pls.' Hr'g Exs. 19, 21, 22, Aug. 29, 2013).  Specifically,

Mislitsky billed 1912.46 hours at an hourly rate of $350 and his legal assistants billed

61.75 hours at an hourly rate of $75.  (Doc. 78-3, Ex. B3; Pls.' Hr'g Ex. 19).  Ms.

Redding individually billed 804.80 hours at an hourly rate of $300 and Mr. Redding

billed 27.25 hours at the same rate.  (Doc. 78-3, Ex. B3; Pls.' Hr'g Ex. 21).  The

Reddings also jointly billed 152.80 hours as "CAR/PJR" or "PJR/CAR," and their

law clerk, Collin Keyser ("Keyser"), billed 107.60 hours at an hourly rate of $100.

(Doc. 78-3, Ex. B3; Pls.' Hr'g Ex. 21).  Finally, plaintiffs' counsel engaged Lori K.

Serratelli, Esquire, as a fee expert and presently seek reimbursement for 35 hours

at an hourly rate of $300 and $18.76 in costs.  (Doc. 89 at 5; Pls.' Hr'g Ex. 22).

On April 12, 2013, plaintiffs filed the instant petition for attorney's fees

pursuant to 42 U.S.C. § 1988 and § 2000e-5(k).  (Doc. 74).  Defendants oppose the

amount claimed because the requested billing rates are excessive and the number

of hours billed are also excessive, duplicative, or otherwise not recoverable.  (Doc.

78).  On August 29, 2013, the court held an evidentiary hearing on the

reasonableness of plaintiffs' counsel's billing rates and billing statements.  (Doc. 83).

At the hearing, defendants further objected to plaintiffs' additional request for

attorney's fees incurred in preparation of the fee petition.  (Doc. 89).  In sum,

plaintiffs seek reimbursement for attorneys' fees in the amount of $914,302.25 until

April 2013 and an additional $74,838.76 for the fee petition and evidentiary hearing

for a total of $989,141.01.  (Doc. 74 ¶ 48; Doc. 89 at 1; Hr'g Tr. 61:2-18, Aug. 29, 2013).

## II.    Legal Standard

The court has discretion to award reasonable attorney's fees and costs to the prevailing party in civil rights litigation.  <u>See</u> 42 U.S.C. §§ 1988, 2000e-5(k).[2]  The court assesses the reasonableness of the requested attorney's fees by applying the lodestar formula, which multiplies the number of hours reasonably expended by a reasonable hourly rate.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 184 (3d Cir. 2001).

It is initially the burden of the prevailing party to demonstrate the reasonableness of the claimed rate and hours spent under a fee-shifting statute. <u>Pennsylvania v. Del. Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 564 (1986); <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990).  The burden then shifts to the opposing party to make specific objections to the proposed hours and rate. <u>Rode</u>, 892 F.2d at 1183.  In considering the objections, the court has significant discretion to adjust the fees and costs downwards.  <u>Id.</u>  However, the court cannot decrease the award <i>sua sponte</i>.  <u>Interfaith Cmty. Org. v. Honeywell Int'l, Inc.</u>, 426 F.3d 694, 711 (3d Cir. 2005).

---

[2] A party may be considered the prevailing party "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983) (citation omitted). This statutory threshold is also satisfied when the litigation successfully terminates by a consent decree or an out-of-court settlement.  <u>See</u> <u>Institutionalized Juveniles v. Sec'y of Pub. Welfare</u>, 758 F.2d 897, 911-12 (3d Cir. 1985).  The court finds that plaintiffs are the prevailing parties in these cases because plaintiffs recovered damages of $450,000 as settlement for vindication of their civil rights.  (Doc. 74 ¶ 31).

5

The resulting lodestar amount is presumed to be a reasonable fee. <u>Del. Valley Citizens' Council for Clean Air</u>, 478 U.S. at 564. The court, however, retains discretion to make adjustments to the lodestar. <u>Rode</u>, 892 F.2d at 1183.

## III. Discussion

### A. Billing Rate

The court shall first determine whether the party seeking attorney's fees has established by satisfactory evidence the reasonableness of their claimed billing rates. <u>Interfaith Cmty. Org.</u>, 426 F.3d at 708. This burden is normally addressed by affidavits prepared by the prevailing party's attorneys and other attorneys in the relevant legal community. <u>Id.</u>; <u>Evans v. Port Auth. of N.Y.</u>, 273 F.3d 346, 360-61 (3d Cir. 2001) (noting that the burden of establishing a *prima facie* case includes evidence of a reasonable market rate and references to billing rates charged by attorneys of equivalent skill and experience with cases of similar complexity). Once the prevailing party has established its *prima facie* case, the burden shifts to the other party to submit rebuttal evidence to contest the reasonableness of the claimed rate. <u>Evans</u>, 273 F.3d at 361.

If the party seeking fees fails to meet its *prima facie* burden, the court has discretion to determine a reasonable billing rate. <u>Loughner v. Univ. of Pittsburgh</u>, 260 F.3d 173, 180 (3d Cir. 2001). In calculating a reasonable billing rate, the starting point is the attorney's usual billing rate, but this is not dispositive. <u>Pub. Interest Research Group of N.J., Inc. v. Windall</u>, 51 F.3d 1179, 1185 (3d Cir. 1995). The court also generally looks to the prevailing market rates in the relevant community. <u>Blum</u>

6

v. Stenson, 465 U.S. 886, 895 & n.11 (1984); Rode, 892 F.2d at 1183.  The court will assess the experience and skill of the attorneys and compare their rates to the prevailing rates where the forum of litigation is located for similar services by attorneys of reasonably comparable skill, experience, and reputation.  Rode, 892 F.2d at 1183; Interfaith Cmty. Org., 426 F.3d at 705.

Plaintiffs request the following hourly rates for their counsel: (1) $350 for Mislitsky, (2) $300 for Ms. Redding, (3) $300 for Mr. Redding, (4) $100 for the Reddings' law clerk, and (5) $75 for Mislitsky's legal assistants.  (Doc. 74 ¶ 17).  However, plaintiffs' attorneys did not submit sworn affidavits containing information about their usual billing rates and experience.  See Diana v. Oliphant, No. 3:05-CV-2338, 2009 WL 2426134, at *5 (M.D. Pa. Aug. 6, 2009).  Plaintiffs' counsel only attached affidavits by three attorneys as support for reasonable hourly rates of experienced trial attorneys in the Harrisburg, Pennsylvania community.  (Doc. 74 ¶ 18; Doc. 73-2).  The court finds that the affidavits fail to establish what constitutes a reasonable market rate because none of the affiants adequately compare Mislitsky and the Reddings with attorneys of reasonably comparable skill and experience in civil rights litigation.  See Dee v. Dunmore, No. 3:05-CV-1342, 2013 WL 685144, at *3 (M.D. Pa. Feb. 25, 2013) (stating that, if the market has established different rates for different categories of legal work, the court should then assign an appropriate rate to each category).  For instance, the Affidavit of Debra Wallet, Esquire, states that, based upon Ms. Wallet's thirty-seven years of experience, including numerous civil rights and sexual harassment cases, an hourly billing rate of $350 "for any

sexual harassment case requiring expert knowledge in the field of civil rights litigation" is reasonable and customary in the Harrisburg area. (Doc. 73-2 at 21-22). However, Ms. Wallet does not demonstrate knowledge of Mislitsky's skills or experience to establish that Mislitsky possessed the required expertise for such a high billing rate.

The Affidavit of Stephen M. Greecher, Esquire, on the other hand, demonstrates personal knowledge of Mislitsky's skills or experience, and avers that $350 per hour is reasonable for Mislitsky and within the range of hourly rates for complex litigation. (Id. at 20). Mr. Greecher focuses on complex litigation, however, instead of testifying to reasonable billing rates and Mislitsky's experience in civil rights cases.

Finally, the Affidavit of Lori K. Serratelli, Esquire, states that the requested billing rates are reasonable and customary for an attorney with the Reddings' and Mislitsky's experience and background. (Id. at 6-7). Although Ms. Serratelli details her thirty-five years of expertise in civil rights and employment discrimination matters in central Pennsylvania, (id. at 3), Ms. Serratelli's conclusory statements regarding the Reddings' and Mislitsky's experience do not allow the court to make a meaningful comparison to her civil rights experience.

Moreover, the unsworn averments in the fee petition regarding Mislitsky's and the Reddings' experience provide inadequate information for any further comparison to the affiants. See Diana, 2009 WL 2426134, at *5. The fee petition only established that Mr. Redding and Ms. Redding have practiced as trial

attorneys for thirty-five years and fifteen years, respectively, in both civil and criminal matters in Pennsylvania state courts. (Doc. 74 ¶¶ 19-20). Plaintiffs also stated that Mislitsky has thirty-five years of experience as a trial attorney, concentrating on medical malpractice in Pennsylvania state courts. (Id. ¶ 21). There is no further information in the fee petition regarding plaintiffs' counsel's experience in civil rights, employee discrimination, or sexual harassment cases in either federal or state courts.

On August 29, 2013, the court granted a hearing for the express purpose of considering evidence regarding the reasonableness of counsel's billing statements and billing rates. (Doc. 83). At the hearing, Mislitsky stated that he did not have any additional testimony to present on the issue of reasonable billing rates, (Hr'g Tr. 7:25-8:10), but plaintiffs' counsel made statements on the record that demonstrated none of them had any prior experience with civil rights matters. (See Hr'g Tr. 22:6-19, 95:7-11, 114:18-24). Moreover, Mr. Redding readily admitted in a letter to defendants' counsel that "it has been painfully evident thru [sic] my participation in this litigation, [that] my legal expertise in the area of civil litigation law is woefully limited." (Doc. 78-2, Ex. A). As a result, the court concludes that plaintiffs have not met their *prima facie* burden to establish that their claimed hourly billing rates are reasonable.

In its discretion, the court shall determine a reasonable billing rate for plaintiffs' attorneys based on similar cases and defendants' rebuttal evidence. Although the affidavits submitted by plaintiffs attest to the significant difficulties in

9

bringing civil rights claims, particularly sexual harassment claims, this issue alone does not justify charging the same billing rates as civil rights attorneys in the Harrisburg area with significantly more civil rights experience. The only record evidence that correctly assesses the Reddings' and Mislitsky's experience in relation to other attorneys is the Declaration of Frank J. Lavery, Jr. submitted by defendants. (See Doc. 78-2). Mr. Lavery acknowledges Mislitsky's experience as a civil litigator, but further details Mislitsky's and the Reddings' lack of experience in civil rights cases. (Id. ¶¶ 10-12). As a civil rights practitioner with twenty-eight years of experience in Harrisburg, Pennsylvania, Mr. Lavery states that, for Mislitsky, "the billing rate charged by attorneys of lesser skill and experience, performing work of similar complexity to this case, would range from $200-$250 per hour," (id. ¶ 9), and also suggests a range from $175-$200 per hour for the Reddings. (Id. ¶ 15).

The court also has significant jurisprudence on reasonable attorney's fees in civil rights cases. The court has granted an hourly rate of $225 for an established civil rights attorney with eleven years of experience, see Carey v. City of Wilkes-Barre, No. 3:05-CV-2093, 2011 WL 1900169, at *2 (M.D. Pa. May 19, 2011), and the same attorney was awarded $250 per hour two years later. See Dee, 2013 WL 685144, at *10. Recently, a magistrate judge sitting as a special master for the Third Circuit found that the prevailing rate in Harrisburg was $300 per hour for two practitioners with 22 years and 35 years of civil rights experience, respectively. See Carey, 2011 WL 1900169, at * 2 (citing Lewis v. Smith, No. 08-3800 (3d Cir. July 28,

2010)).  The court also awarded an hourly rate of $250 for an experienced trial

attorney who participated in over two hundred trials in state court and

demonstrated high competence in the civil rights case.  Diana, 2009 WL 2426134, at

*5.  As a result of these recent civil rights cases, the court concludes that the

requested billing rates are unreasonably high in light of plaintiffs' lack of

experience in civil rights matters.  The court holds that a reasonable hourly rate for

Mislitsky as an experienced trial attorney is $250, and a reasonable hourly rate for

the Reddings is $200 due to less experience than their co-counsel.

Plaintiffs did not submit any evidence to demonstrate that the requested

rates for the Reddings' law clerk or Mislitsky's legal assistants are reasonable[3] and

thereby failed to satisfy its *prima facie* burden.  The court notes that defendants did

not contest the billing rate for the legal assistant, and the court, in its discretion,

will only set a reasonable billing rate for the law clerk.  Defendants cite this court's

decision in Shaw v. Cumberland Truck Equip. Co., Civil Action No. 09-359, 2012 WL

1130605 (M.D. Pa. Mar. 30, 2012), as support for an hourly rate of $60.  However, the

court notes that, in Shaw, the uncontested law clerk rate of $60 per hour was

significantly less than the paralegal rate of $95 per hour.  Id. at *1.  The court finds

that the law clerk in Shaw appears to refer to a legal assistant whereas, in this case,

the responsibilities of the law clerk, Collin Keyser, are more similar to a paralegal

---

[3] The Supreme Court has established that paralegal and law clerk fees are
also recoverable under 42 U.S.C. § 1988.  See Missouri v. Jenkins, 491 U.S. 274, 285-
87 (1989).

than a legal assistant.  In <u>Shaw</u>, the court found that the range for paralegal services in Pennsylvania is $70 to $120 per hour and therefore $95 per hour was a reasonable rate for paralegals.  <u>Id.</u> at *4.  Also, the courts in the Western and Eastern Districts of Pennsylvania have held that $90 is a reasonable hourly rate for paralegals and law clerks.  <u>Haisley v. Sedgwick Claims Mgmt. Servs., Inc.</u>, Civil Action No. 08-1463, 2011 WL 4565494, at *10 (W.D. Pa. Sept. 29, 2011) (collecting cases); <u>Disciullo v. D'Amrosio Dodge, Inc.</u>, Civil Action No. 06-1775, 2008 WL 4287319, at *3 (E.D. Pa. Sept. 18, 2008).  Thus, the court finds that a reasonable billing rate for Keyser is $90 per hour.

**B.      Reasonableness of Hours Expended**

The court must also determine whether plaintiffs have submitted evidence of the number of hours worked that is specific enough to allow the court to determine their reasonableness.  <u>Washington v. Phila. Cnty. Ct. of Common Pleas</u>, 89 F.3d 1031, 1037 (3d Cir. 1996); <u>Rode</u>, 892 F.2d at 1183.  The court must examine the record to determine that the hours billed are reasonable for the work performed and exclude those entries which are redundant, excessive, or unnecessary.  <u>Pub. Interest Research Group of N.J., Inc.</u>, 51 F.3d at 1188; <u>Rode</u>, 892 F.2d at 1183.  Once the prevailing party has met its initial burden, the opposing party has the burden to challenged the requested fee with sufficient specificity to put the prevailing party on notice.  <u>Rode</u>, 892 F.2d at 1183.  The burden then shifts back to the prevailing party to justify the size of its request.  <u>Interfaith Cmty. Org.</u>, 426 F.3d at 711.  Upon objection from the opposing party, the court has "a positive and affirmative

function in the fee fixing process, not merely a passive role." <u>Maldonado</u>, 256 F.3d at 184; <u>Loughner</u>, 260 F.3d at 178. A court must do more than a cursory review of billing records and must "go line, by line, by line" through the billing records supporting the fee request. <u>Evans</u>, 273 F.3d at 362.

In analyzing the legal services rendered in these cases, the court will consider the following specific categories of billing entries to which defendants objected: (1) research, (2) depositions, (3) internal communications, (4) discovery, (5) clerical work, (6) vague entries, and (7) the fee petition. The court will examine the hours expended in these categories *seriatim*.

### i. *Research and Memoranda*

Defendants contend that plaintiffs' counsel's lack of experience in civil rights litigation led to excessive and duplicative time spent on research and writing memoranda. Defendants argue that plaintiffs should not recover fees for: (1) excessive Title VII research because plaintiff's counsel knew or should have known those claims were not viable; (2) excessive research and memoranda on Section 1983 claims; (3) excessive and duplicative research by Mislitsky because of the agreement between plaintiffs' counsel on division of responsibilities; and (4) unrecoverable background research and research on subjects unrelated to the claims. (Doc. 78 at 13, 19-24). The court will address each issue *infra*.

As a general matter, defendants object to the duplicative process plaintiffs' counsel employed to conduct research. The court may reduce the fee award for duplication only if attorneys are unreasonably doing the same work. <u>Rode</u>, 892 F.2d

13

at 1187 (citations omitted). It is not necessarily unreasonable for senior attorneys to review the work of less experienced associates. See Bell v. Lockheed Martin Corp., Civil No. 08-6292 (RBK/AMD), 2012 WL 1677240, at *2 (D.N.J. May 14, 2012) (finding that reviewing and commenting on another's work product are distinct from writing the document to be reviewed). On the other hand, when senior attorneys review each other's work and both bill at high hourly rates, it may be unreasonable to charge for both senior attorneys at the same rate and for the same number of hours. See Becker v. ARCO Chem. Co., 15 F. Supp. 2d 621, 633 (E.D. Pa. 1998).

In assessing objections for duplicative charges, the court must identify the overlapping hours in the record and determine whether such overlap was unreasonable, thereby warranting a fee reduction. Rode, 892 F.2d at 1187-88. Attached as Exhibit 1 is a spreadsheet referring to the billing lines from the chart of all fees in chronological order included in defendants' expert report by John W. Toothman, Esquire. (Doc. 78-3, Ex. C). Exhibit 1 contains columns granting or denying fees for each billing line, identifying the court's reason, such as duplicative charges, and reducing the number of hours for the reasons contained herein in order to calculate the reasonable fee.

During the evidentiary hearing, Ms. Redding testified that Mislitsky frequently asked her to research a certain subject matter and, in turn, she asked her law clerk, Collin Keyser, to conduct the research. (Hr'g Tr. 106:8-25). Ms. Redding further explained that Keyser was asked only to pull the cases and Ms. Redding would then read the cases and compose internal memoranda for Mislitsky.

14

(Hr'g Tr. 106:8-25, 112:21-113:22).  Mislitsky would review the research and often ask Ms. Redding through internal memoranda or conference calls to conduct further research.  (Hr'g Tr. 105:23-106:7, 116:6-17)  Mislitsky also testified that he would read the cases Keyser pulled, as well as any of Ms. Redding's memoranda.  (Hr'g Tr. 37:1-3).

Plaintiffs' counsel seeks to make two distinctions to justify this duplication of effort.  First, Ms. Redding attempts to distinguish Keyser's role of merely pulling cases from her role in reading the cases and writing the memoranda.  (Hr'g Tr. 112:21-113:22).  Second, Mislitsky seeks to create a distinction between reading cases and conducting research.  (Hr'g Tr. 36:19-21, 37:1-3).  The court finds that these distinctions only highlight the duplicative and inefficient nature of the research process.  Efficient research is a simultaneous process of searching for cases, reading them, and compiling notes or a memorandum, if necessary.  It is highly unlikely that Keyser would be able to pull relevant cases without also reading them.  Also, Ms. Redding often expended more time reviewing the research of her law clerk than Keyser spent researching.  (Doc. 78 at 14).  Ms. Redding's role in reviewing the relevant cases to compose memoranda, however, is not necessarily the same task as searching for those cases.  Although it was reasonable for Ms. Redding to review the work of her law clerk, the court finds that it was not reasonable for Ms. Redding to spend more time doing so than Keyser spent on the research.  Cf. Bell, 2012 WL 1677240, at *2 (finding that review by five different partners was not unreasonable when the motion for contempt was sufficiently

complex and the partners only expended reasonable amounts of time, ranging from 0.2 to 0.5 hours).  The court attributes approximately 120 hours to duplication in conducting the research and reviewing cases, which will be excluded from fee recovery as detailed in Exhibit 1.

Mislitsky also performed the same work as Ms. Redding by re-reviewing the same cases, rendering the internal memoranda moot.  It is clearly unreasonable for both Mislitsky and Ms. Redding to bill for so many hours on the same task.  Therefore, the court will exclude Mislitsky's duplicative billing entries for research or reading cases, as well as those entries which fail to identify the subject matter, thereby precluding a determination as to their reasonableness.  See Hensley, 461 U.S. at 433 (stating that where documentation of hours is inadequate, the court may reduce the fee award accordingly).

One additional observation bears emphasis: this three-step research process also created excessive time entries because it generated numerous internal conferences and communications.  The court will address this issue *infra*.

### a.     Research on Title VII Claims

Defendants assert that the 111.55 hours of research plaintiffs' counsel expended on Title VII claims is excessive because plaintiffs' counsel was aware or should have been aware that the Township did not have fifteen employees to qualify as an "employer" for a viable Title VII claim.  See 42 U.S.C. § 2000e(b).  The court notes that defendants do not raise the failed Title VII claims as a reason for downwards adjustment of the lodestar, see Hensley, 461 U.S. at 436-37, and instead

argue that the research was unnecessary and excessive because it was not useful to secure the settlement. See Del. Valley Citizens' Council for Clean Air, 478 U.S. at 561 (stating that requested fees must be for work that is "useful and of a type ordinarily necessary" to secure the final result obtained from the litigation) (citation omitted).

According to billing records, plaintiffs' counsel started researching Title VII claims against the Township two weeks before filing the complaints in June 2011. (See Doc. 78-3, Ex. G10). Within a month, plaintiffs' counsel expended 46 hours on Title VII research, including 11.25 hours in one day on the threshold issue of the number of employees necessary for a Title VII claim. (See id.) Plaintiffs give no justification for the excessive amount of research on a single threshold issue or for continued research on Title VII claims as reflected in the billing records. Mislitsky billed 6.3 hours after he admitted to defendants' counsel, Christopher P. Gerber, Esquire, that plaintiffs did not have a viable Title VII claim. (See id.; Hr'g Tr. 78:22-24). The court finds that it was unreasonable for plaintiffs' counsel to charge for a total of 111.55 hours on Title VII claims when a few hours would have been more than sufficient to determine that plaintiffs did not have a viable claim in light of the fifteen-employee threshold. Accordingly, the court will exclude all entries for Title VII research other than five hours on July 12, 2010, and the court will reduce the hours by 50% for entries including both Title VII and Section 1983 research, as detailed in the attached Exhibit 1.

## b.     Research on Section 1983 Claims

Defendants also argue that 154.90 hours of research and drafting memoranda on Section 1983 claims (including combined Title VII entries) is excessive. (See Doc. 78-3, Ex. G28). Defendants object to numerous specific instances involving repetitive research among Keyser, Ms. Redding, and Mislitsky, and almost 60 hours billed by Ms. Redding for drafting memoranda. In reviewing each billing line, the court notes that it has already reduced or eliminated many of the billing entries related to Section 1983 based upon the overlapping objections addressed herein, including excessive Title VII research, excessive deposition preparation, and duplication of research. Notwithstanding such overlap, plaintiffs' counsel still seeks to recover fees for a total of 80.25 hours, or the equivalent of two full 40-hour weeks, for research, memoranda, and internal communications on Section 1983.

Although Keyser spent 6.75 hours on Section 1983 research, plaintiffs have not explained why Ms. Redding then expended 47 hours writing memoranda and emails regarding Section 1983 claims after spending 10 hours reviewing Keyser's research. (See id.) Plaintiffs' counsel repeated the same research nearly two years later in preparation for depositions and the motion for partial summary judgment. (See id.) These billing entries again demonstrate the inefficiency of the research process employed by plaintiffs' counsel. In addition to legal research and memoranda, Ms. Redding spent over 10 hours researching complaint templates and procedural prerequisites to filing Section 1983 claims. (See id.) The Court finds that it is inappropriate for Ms. Redding, an experienced trial attorney in civil

litigation, to seek the recovery of charges attributable to such basic issues.  <u>See</u>

<u>E.E.O.C. v. Fed. Express Corp.</u>, 537 F. Supp. 2d 700, 725 (M.D. Pa. 2005).  As a result

of excessive charges, the court, in its discretion, will reduce the fee award by 25%

for the billing lines related to Section 1983 claims unaddressed by other objections.

<u>c.</u>      <u>Research conducted by Mr. Mislitsky</u>

Defendants urge the court to exclude 366.10 hours of research conducted by

Mislitsky, (<u>see</u> Doc. 78-3, Ex. G24), because Mislitsky agreed to a division of

responsibilities with co-counsel whereby the Reddings were responsible for all legal

research.  (Doc. 74 ¶ 11).  As previously discussed, Mislitsky duplicated research by

reviewing all the cases that Keyser and Ms. Redding already reviewed.  <u>See</u> *supra*

Section III.B.i.  Mislitsky also identified several areas in which he conducted his

own research: (1) overview of municipal law, (Hr'g Tr. 39:1-14), (2) information

regarding administrative relief from the Equal Employment Opportunity

Commission and Pennsylvania Human Relations Commission, (Hr'g Tr. 39:16-23),

(3) the Federal Rules of Civil Procedure related to discovery, (Hr'g Tr. 40:22-23), and

(4) sexual harassment and post-traumatic stress disorder.  (Hr'g Tr. 41:4-11).  As a

threshold matter, the court finds no reason to conclude that the existence of a co-

counsel agreement alone means that Mislitsky as lead counsel cannot conduct any

research or recover for that research.

Turning to Mislitsky's background research on municipal law and review of

the federal rules, it is well-established that such general education or background

research should not be charged to the client.  <u>Garner v. Meoli</u>, No. CIV. A. 96-1351,

19

1998 WL 560377, at *3 (E.D. Pa. Aug. 31, 1998). Plaintiffs' counsel may not demand a high hourly rate based on his or her experience, reputation, and presumed familiarity with the applicable law, and subsequently spend an inordinate amount of time researching that same law. Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983). Furthermore, hours that are not properly billed to plaintiffs as the clients are also not properly billed to defendants under a fee-shifting statute. Hensley, 461 U.S. at 434 (citation omitted). Therefore, the court will exclude all rule review and background research to reduce fees as specified in Exhibit 1.

Next, defendants argue that the approximately 66 hours Mislitsky billed for research on qualified immunity was excessive and duplicative because Ms. Redding and Keyser also expended 30.45 hours on the same issue. At the evidentiary hearing, Mislitsky countered that qualified immunity was the pivotal issue that governed potential recovery from the Township officials in these cases. (Hr'g Tr. 26:1-15, 28:22-29:11). After reviewing the billing lines for such research, the court finds that research equivalent to over two 40-hour weeks on the narrow topic of qualified immunity was excessive and duplicative. As a result, the court will grant Mislitsky a fee award for 16 hours devoted to qualified immunity, as noted in Exhibit 1, and will address Ms. Redding and Keyser's additional efforts *infra*.

Defendants also argue that the research on sexual harassment and post-traumatic stress disorder was excessive in that Mislitsky recorded 109.45 hours of research on that narrow issue. Mislitsky and Ms. Redding both testified in detail at the evidentiary hearing regarding the emotional trauma plaintiffs suffered from the

sexual harassment and difficulties counsel faced in pursuing these cases. (Hr'g Tr. 23:18-25, 104:19-24, 107:24-108:12). As a trial attorney focused on medical malpractice, Mislitsky emphasized the important of understanding the health issues associated with sexual harassment, developing expert testimony, and seeking damages for those issues in these cases. (Hr'g Tr. 41:4-42:18). Nevertheless, Mislitsky also stated that he asked the expert psychiatrists he engaged, Dr. Mauch and Dr. Maze, to undertake such research. (Hr'g Tr. 41:17-21). Given the support of the mental health experts in conducting the research, the court finds that Mislitsky's independent research was excessive, if not entirely duplicative, and will reduce recovery by 75% as detailed in Exhibit 1.

### d. __Other Research__

Defendants further object to research and memoranda on issues other than Title VII and Section 1983 as excessive and unnecessary. These issues include: (1) the Pennsylvania Human Relations Act, (2) First Amendment retaliation claims, (3) local municipality liability, (4) potential motions under Federal Rule of Civil Procedure 12(b)(6), (5) initial disclosures under the Federal Rules of Civil Procedure, (6) subpoena and use of records from state police, (7) discovery of insurance, (8) qualified immunity, (9) Federal Rule of Civil Procedure 68(b), and (10) the Lilly Ledbetter Fair Pay Act. (Doc. 78 at 19-21, 24).

In addition to the issue of duplication previously discussed, defendants object specifically to Ms. Redding's review of Keyser's research on the above-listed issues as duplicative. The court finds that, to the extent not excluded for various

21

objections, Ms. Redding's time spent writing memoranda on Keyser's substantive research was reasonable, but the court will exclude Ms. Redding's duplicative review of Keyser's research.

Also, as previously noted, general education or background research is not recoverable from a client and is therefore also not recoverable under fee-shifting statutes. <u>See</u> <u>Ursic</u>, 719 F.2d at 677; <u>Hensley</u>, 461 U.S. at 434. The court will exclude as background research over 25 hours expended by Ms. Redding and her law clerk, Keyser, on research and memoranda related to the Federal Rules of Civil Procedure and how to conduct discovery. (<u>See</u> Doc. 78 at 20-21).

Plaintiffs' attorneys also claim extensive experience in municipal law by acting as solicitors for several municipalities. (Doc. 74 ¶ 22). Yet, Keyser and Ms. Redding spent an aggregate of 30 hours researching and drafting a memorandum on local municipality liability. (<u>See</u> Doc. 78-3, Ex. G11). After reducing the total number of hours by nine for duplicative research, the court finds that 25% of the remaining hours or 5.25 hours is more than sufficient to research and write a memorandum on the issue.

Regarding the Pennsylvania Human Relations Act, Mislitsky testified at the evidentiary hearing that he conducted research on, and prepared all the documentation for, seeking administrative relief prior to commencing these cases. (Hr'g Tr. 97:15-100:24). However, Keyser and Ms. Redding also billed a total of 22.5 hours on the same subject matter. The court will exclude the 12 additional hours of

research spent prior to filing the complaints as excessive and duplicative based on Mislitsky's testimony.

Finally, defendants object to research regarding First Amendment retaliation claims and the Lilly Ledbetter Fair Pay Act as excessive and unnecessary. The court agrees that such research was not useful or necessary to secure the settlement, see Del. Valley Citizens' Council for Clean Air, 478 U.S. at 561, and will exclude 16.5 hours attributable to these issues.

### ii. *Deposition Preparation, Attendance, and Review*

Defendants also take issue with the hours expended on depositions. Specifically, defendants allege that (1) attendance at depositions by both Mislitsky and Ms. Redding was duplicative, (2) preparation for depositions by both Mislitsky and Ms. Redding was excessive and duplicative, (3) review of depositions by both Ms. Redding and Mislitsky was excessive, and (4) additional review of the depositions by Mislitsky's legal assistants was excessive and duplicative.

The court held in Shaw that it is redundant for two or more attorneys to attend depositions without a showing of necessity and reduced fee recovery by half for those entries. Shaw, 2012 WL 1130605, at *5. In this case, the court notes that, although Ms. Redding attended numerous depositions with Mislitsky, she only billed for two depositions - Vivian Coy and Ken Gruver - totaling 4 hours. (See Doc. 78-3, Exs. E, G4). Ms. Redding testified at the evidentiary hearing that she conducted the deposition of Ms. Coy. (Hr'g Tr. 107:16-20). However, neither Ms. Redding nor Mislitsky demonstrated necessity for the presence of two attorneys at

both depositions. Therefore, the court will eliminate 1.1 hours for Ms. Redding's attendance at Mr. Gruver's deposition and 2.9 hours for Mislitsky's attendance at Ms. Coy's deposition. (See Doc. 78-3, Ex. E).

The court reasoned in Shaw that the advantage to having co-counsel was being able to economically divide the work of deposing many witnesses, including preparation and attendance. Shaw, 2012 WL 1130605, at *5. For this reason, defendants also object to 279.5 hours spent by Mislitsky and 132.25 hours spent by Ms. Redding researching and preparing for depositions that lasted approximately 89 hours as both excessive and duplicative. (See Doc. 78-3, Exs. E, G5). Generally, the higher the hourly rate charged by an attorney based upon his or her skill and experience, the shorter the time it should take him or her to perform a particular task. Rainey v. Phila. Hous. Auth., 832 F. Supp. 127, 130 (E.D. Pa. 1993). As a trial attorney for thirty-five years, Mislitsky cannot justify spending three hours preparing for each hour of deposition. Considering Ms. Redding's preparation time as well, plaintiffs' counsel expended 4.2 hours preparing for each hour of deposition. Moreover, plaintiffs' counsel gave no explanation for Ms. Redding's redundant efforts except that Ms. Redding conducted the deposition of Ms. Coy. As a result of plaintiffs' failure to justify the duplicative and excessive deposition preparation, the court will exclude Mr. Redding's four hours of deposition preparation as well as all of Ms. Redding's hours except for six hours related to Ms. Coy's deposition. The court will also reduce by 25% Mislitsky's hours for preparation, and Ms. Redding's and Keyser's hours for research related to depositions, as detailed in Exhibit 1.

24

Similarly, defendants propose reducing all deposition review by Mislitsky and Ms. Reddings for excessiveness, including 189.7 hours Ms. Redding spent compiling deposition digests. (See Doc. 78-3, Ex. G6). Defendants also seek to eliminate 47.5 hours that Mislitsky's legal assistants spent reviewing deposition transcripts as duplicative. (Id.) It is unreasonable for an attorney to claim reimbursement at a high hourly rate for tasks that could be effectively performed by less expensive individuals. Loughner, 260 F.3d at 180; Ursic, 719 F.3d at 677 (stating that the court does not "approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates"). After a thorough review of the deposition digests plaintiffs provided at the evidentiary hearing, (Pls.' Hr'g Exs. P31-P36), the court finds that the hours Ms. Redding expended on creating the digests was excessive. As an experienced trial attorney, Ms. Redding should have delegated such a tedious task of summarizing deposition topics with citations to the transcript to a less experienced attorney or paralegal. Therefore, the court will reduce the excessive expense on deposition digests and review by 50%. The court will also reduce Mislitsky's hours on deposition review unrelated to the digests by 25% because plaintiffs' counsel has not established the necessity of such duplication. Finally, in light of the detailed deposition digests prepared by Ms. Redding, the court will exclude 47.5 hours expended by Mislitsky's legal assistants reviewing the same deposition transcripts.

### iii. *Internal Communications*

Defendants request the court to scrutinize internal communications between co-counsel for excessive and redundant hours because plaintiffs' counsel billed 822 total hours for internal communications, including 307 hours in large blocks of more than one hour. (See Doc. 78-3, Exs. G20, G22). Specifically, defendants call the court's attention to excessive conferences between co-counsel reviewing research or Federal Rules of Civil Procedure, (see id., Ex. G20), and conferences with co-counsel or plaintiffs before or after depositions totaling 54.28 hours. (Compare id. Ex. E, with id., Ex. G4).

The court recognizes that conferences between attorneys are necessary, valuable, and often result in greater efficiency and less duplication of effort. However, a disproportionate number of hours for internal communications between attorneys may indicate unreasonable overstaffing, particularly when attorneys charge for internal communications at senior counsel rates. Blum v. Witco Chem. Corp., 829 F.2d 367, 378-79 (3d Cir. 1987); Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty., No. 02:06-CV-1064, 2012 WL 604156, at *10 (W.D. Pa. Feb. 24, 2012). Moreover, frequent communications and conferences between counsel and support staff are not recoverable. See Defurio v. Elizabeth Forward Sch. Dist., Civil Action No. 05-1227, 2008 WL 2518139, at *4 (W.D. Pa. June 19, 2008).

The court will reduce the number of hours expended on internal communications because, although regular conferences are expected among co-counsel, there is simply no justification for billing over 800 hours on internal communications alone.  First, the court will exclude communications related to unrecoverable background research and clerical tasks.  Also, certain internal communications are simply an extension of excessive and duplicative research and will be reduced in accordance with the court's findings herein on such research.  Finally, the main issue affecting the court's determination is that many of these entries involve block-billing where plaintiffs' counsel entered multiple tasks under one time entry.  (See Doc. 78-3, Ex. G22)  Where the court is unable to separate unrecoverable time from recoverable time in such billing entries, the court may reject the entire billing entry.  See Rode, 892 F.2d at 1191 (stating that party seeking fees risked reduction for excessiveness by aggregating hours for multiple tasks); Estate of Schultz v. Potter, 2010 WL 883710, at *7 n.14 (W.D. Pa Mar. 5, 2010) (disallowing block entries in their entirety because petitioner "block bills at his own peril"); Veneziano v. Long Island Pipe Fabrication & Supply Corp., 238 F. Supp. 2d 683, 695 (D.N.J. 2012) (stating that, to the extent there is doubt as to the amount of fees to be awarded, the doubts should be resolved against an award because prevailing party bears the burden of establishing its right to them).  Upon thorough review of each billing line, including fifteen pages on internal communications, the court will exclude all block-billing entries, as specified in Exhibit 1, because the court cannot distinguish recoverable time within each aggregated time entry.

Although many of the entries regarding communications before or after depositions are also block-billed, the court can determine the amount of time expended on such communications based on the length of the depositions. (See Doc. 78-3, Exs. G4, G5). The court concludes that 54.28 hours for conferring with co-counsel and clients in addition to the 411.75 hours billed for preparation is unreasonable because the depositions on the relevant dates only lasted for 41.23 hours. (See id.) There is no reason plaintiffs' counsel needed to confer with each other or plaintiffs for the same amount of time as the depositions themselves in light of extensive prior preparation. Therefore, the court will reduce the time spent on conferences before or after depositions by 25% as noted in Exhibit 1.

### iv.    *Discovery Requests and Review*

Defendants argue that the time plaintiffs' counsel spent on propounding and reviewing discovery was excessive and should be reduced substantially because a more experienced attorney should take less time to perform such tasks. Rainey, 832 F. Supp. at 130. Ms. Redding alone billed 41.75 hours related to drafting 41 document requests and interrogatories. (Doc. 78 at 27; see Doc. 78-3, Ex. G1). In addition to reading basic rules of discovery, Mislitsky recorded 40 hours for reviewing and revising the discovery requests. (See Doc. 78-3, Ex. G1). It is simply unreasonable for experienced attorneys, such as Mislitsky and Ms. Redding, to expend two hours per request or interrogatory. After reviewing each billing line, the court will reduce the hours spent drafting and revising the discovery requests

by 50%. The court will also exclude the time that Mislitsky spent reviewing the basic rules of discovery and duplicating Ms. Redding's efforts as noted in Exhibit 1.

In terms of document review, 400 pages of documents were produced, which would take even a newly barred attorney only a few days to review rather than over 70 hours. (See Doc. 78-3, Ex. G2). Mislitsky justified some time expended on reviewing discovery at the evidentiary hearing because he testified that he reviewed certain documents with plaintiffs in detail. (Hr'g Tr. 91:25-92:23). Nevertheless, taking into account such meetings with plaintiffs, the court will adopt the suggestion of defendants' expert, John W. Toothman, Esquire,[4] of a 25% reduction, (see Doc. 78-3, Ex. B6), and reduce certain billing lines as excessive as detailed in Exhibit 1.

### v.    *Clerical Entries*

Defendants further object to 46.35 hours expended on clerical or administrative tasks. It is well-established that time expended to perform clerical work is not recoverable, especially at an experienced attorney's high hourly rate or even paralegal rates. See Jenkins, 491 U.S. at 288 n.10; Shaw, 2012 WL 1130605, at *7. Clerical work is instead considered to be part of an attorney's hourly rate as office overhead. See Shaw, 2012 WL 1130605, at *7; Scheffer v. Experian Info.

---

[4] Mr. Toothman is the founder of a legal fee management and litigation consulting firm. Defendants engaged Mr. Toothman as an expert to review plaintiffs' petition for attorney's fees. He converted and sorted the billing records into numerous spreadsheets, attached as exhibits to his report, corresponding to the various issues raised in his report. (See Doc. 78-3).

Solutions, Inc., 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003). In addition to 8.25 hours by his legal assistants, Mislitsky billed 38.1 hours involving some clerical work at $350 per hour. (See Doc. 78-3, Exs. G19, G23). There is no justification for passing on costs of $13,335 for administrative tasks to plaintiffs or subsequently defendants under a fee-shifting statute. Moreover, Mislitsky often block-billed multiple tasks under one time entry. (Id.) In this case, the court, in its discretion, will eliminate fees for all block-billed entries, as well as the 8.25 hours spent by his legal assistants and 50% of Mislitsky's hours spent on clerical work.

### vi. *Vague Entries*

Defendants object to several billing entries as insufficiently specific for the court to determine their reasonableness. Attorneys requesting fees must document with specificity the hours for which reimbursement is sought to permit the reviewing court to assess their recoverability; otherwise, the court may reduce the fee award. Washington, 89 F.3d at 1037; Hensley, 461 U.S. at 433. To be specific enough, a fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." Rode, 892 F.2d at 1190 (citation omitted). However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted." Id. (citation omitted).

Defendants challenge a number of entries adding up to 35.4 hours as insufficiently specific where Mislitsky simply stated "research" or "reading."

However, each challenged entry lists the general task performed, the attorney who performed the task, and the date and time spent in fractional hours. The court need not inquire any further. See Washington, 89 F.3d at 1037-38 (holding that the court erred by finding itemized and dated billing records to be vague where the records included entries such as "research," "review," and "prepare"); Garner, 1998 WL 560377, at *2 (rejecting a vagueness challenge to time sheets that included entries such as "research" and "background" because "[t]he records disclose with sufficient specificity who worked on what aspect of the case and for how long"). Notwithstanding defendants' other objections for duplication of research, the court will not exclude such hours on the basis of vagueness.

Defendants also object to three specific billing entries as too vague to determine reasonableness. First, Mislitsky billed 4.6 hours for a "Meeting in Chambersburg" on July 14, 2010 without any further explanation. (Doc. 78 at 29). The court cannot determine from this description who attended or what general legal activity was involved. The court will therefore exclude this billing entry. Second, on July 28, 2011, Mislitsky entered 0.3 hours with the description "to Pat &c." (Id. at 30). Although the reference is clearly to the Reddings, there is no description as to the activity involved and, therefore, the court will exclude it. Finally, Mislitsky's legal assistants billed a total of 4.5 hours across three dates for "Assistant - Research." (Id. at 30; see Doc. 78-3, Ex. G19). The court cannot determine the reasonableness of such research in light of the excessive and

duplicative research conducted throughout these cases. Without any further information, the court will exclude these entries.

### vii.    *Miscellaneous Objections*

Defendants and Mr. Toothman raise several miscellaneous objections. First, defendants object to fees for 53.8 hours expended prior to February 2010 based on plaintiffs' statements in the fee petition. (See Doc. 78-3, Ex. G15). In describing the litigation history of these cases, plaintiffs included a footnote in the fee petition, stating that "[t]ime expended between September 2009 and January 2010 was not included as 'billable' time." (Doc. 74 ¶ 28 n.6). Thus, plaintiffs are seeking fees for services rendered during and after January 2010. It is also clear from the billing entries that plaintiffs' counsel initiated the administrative remedy process in January 2010, (see Doc. 78-3, Ex. G15), and Mislitsky testified that he intended to request reimbursement for those efforts. (See Hr'g Tr. 97:15-100:24). Hence, the court will exclude only 26 hours for work in September and November 2009 from the fee award.

Second, defendants object to the charge for research conducted by Daniel J. Menniti, Esquire. During the evidentiary hearing, Mislitsky withdrew his request for fees related to Mr. Menniti's work. (Hr'g Tr. 46:19-25). Defendants further object to the hours Mislitsky expended reviewing such research. (Doc. 78 at 16; Hr'g Tr. 64:11-66:7). These objections are meritorious, and the court will reduce the fee request for time associated with Mr. Menniti's research and related review or internal communications as noted in Exhibit 1.

Third, defendants questioned Mislitsky regarding his request for fees related to administrative tasks.  In the course of responding to this cross-examination, Mislitsky identified two identical billings for 4.3 hours for the same task and withdrew the claim for one of those entries.  (Hr'g Tr. 92:24-93:4).  Accordingly, the court will exclude 4.3 hours from Mislitsky's fee petition.  Mr. Toothman's report identifies several more examples of duplicate time entries, (see Doc. 78-3 at 53, Ex. G17), including instances of multiple entries for the same day that reflect the performance of identical tasks.  (Id. at 53).  After careful review of the billing statements, the court will remove such duplicate entries from the fee award, and exclude any block-billed entries.

Fourth, defendants assert that the court should substantially discount 134.6 hours of time entries in which the Reddings recorded time as "CAR/PJR" or "PJR/CAR" because such entries are duplicative.  Defendants argue that these entries should be considered to be billed at plaintiffs' peril, similar to block-billing, because instances of exact overlap in time and task cannot be segregated.  (Doc. 78 at 28).  The court finds that the distinction in these entries from block-billing is that the court can clearly determine the time spent and task performed and must only determine the attorney or attorneys who performed the task.  After thorough review of the billing statements, and upon consideration of Ms. Redding's testimony explaining an exemplary time entry, (see Hr'g Tr. 124:4-23), the court finds that the Reddings did not simply double the time for each task they both performed.  The record reflects that the Reddings exercised proper discretion and adjusted their

billing statements to ensure that only one attorney charged his or her time for the task performed. (See Hr'g Tr. 104:6-8). Accordingly, the court will not reduce the time recorded in the Reddings' dual timekeeper entries.

Fifth, Mr. Toothman asserts that the state law tort claims do not provide any statutory basis for fee-shifting. (Doc. 78-3 at 8, 24). A fee award must exclude distinct successful claims for which there is no statutory fee-shifting authority, including hours devoted to non-compensable state law claims. Northeast Women's Center v. McMonagle, 889 F.2d 466, 476 (3d Cir. 1989); Baughman v. Wilson Freight Forwarding Co., 583 F.2d 1208, 1215-16 (3d Cir. 1978). One time entry by Ms. Redding relates to the claim of battery, and one entry by Mislitsky mentions "PA tort claims." (Doc. 78-3 at 8). The court will exclude these two entries as not recoverable.

Finally, Mr. Toothman suggests a reduction for excessive time expended on motions practice. (Id. at 14-16). Mr. Toothman states that plaintiffs' counsel spent 66 hours or $23,100 in two weeks on two motions in limine and a motion to bifurcate. (Id. at 14, Ex. G8). The court finds that it is unreasonable for plaintiffs' counsel to spend over 17 hours "reviewing" the defendants' motions. (Id., Ex. G8). Similarly, the court cannot reward plaintiffs' counsel for expending another full week of work, or 43.4 hours, on responses when significant time was wasted reviewing rules and conducting basic research of deposition transcripts. (Id.)

Plaintiffs' counsel spent approximately 300.3 hours or $101,525 over the course of three months, responding to a motion for partial summary judgment. (Id.

34

at 15, Ex. G9).  Mr. Toothman notes that these numbers do not even reflect all of the time spent on the opposition brief because they do not take into account the hundreds of hours of research accumulated before the motion was filed.  (Id. at 15).

It is rather astonishing that plaintiffs' counsel expended over 20 hours conducting research that was already completed and the subject of numerous memoranda almost two years earlier.  (Id., Ex. G9).  Even more astonishing is that, after Mislitsky spent 24 hours drafting a response, Ms. Redding spent 8.1 hours preparing an outline for the memorandum of law in opposition to the motion and Mislitsky then expended another 58.2 hours revising the same outline.  (Id.)  After 90 hours of preparation, Mislitsky took another 128 hours to draft, review, and file the opposition to the motion for partial summary judgment.  (Id.)  The number of hours expended on the response, including over 25 hours reviewing depositions before the motion was even filed, (id.), is clearly unreasonable.  As a result of such excess, in addition to any deductions for other objections, the court will reduce the fee award for motions practice by 50% as specified in Exhibit 1.

After addressing all of defendants' objections as set forth above and as further delineated in Exhibit 1 to this Memorandum, the court holds that the lodestar amount for these cases is $268,628.40.

### viii.   Fee Petition

A party entitled to a fee award is also entitled to reimbursement for the time spent preparing the fee petition, often referred to as "fees on fees."  Prandini v. Nat'l Tea Co., 585 F.2d 47, 53 (3d Cir. 1978).  However, a request for attorney's fees

should not result in a "second major litigation." Hensley, 461 U.S. at 437. A request for fees on fees should be treated as a separate matter, subject to lodestar calculation and Hensley adjustment analysis. Rode, 892 F.2d at 1192 (citation omitted). Having determined reasonable billing rates for plaintiffs' counsel, the court will consider the reasonableness of the hours billed for the fee petition.

Plaintiffs' counsel billed approximately 120 hours for preparing the fee petition until April 2013 and submitted an additional request for 191.4 hours along with $10,518.76 in expert fees. Defendants first object to these fees on fees as grossly excessive because other courts have awarded fees in the range of 15 to 23 hours for similar petitions. For example, an extensive 48-page petition with 17 pages of billing records warranted an award for 23 hours, see Danny Kresky Enter. Corp. v. Magid, 716 F.2d 215, 219 (3d Cir. 1983), and a similar 11-page petition with 15 pages of billing records that also included a 16-page reply brief justified an award of 15 hours. See Shaw, 2012 WL 1130605, at *6; see also Maldonado, 256 F.3d at 187 (awarding 10 hours for a 6-page fee petition largely supplemented by affidavits of several counsel, resumes, and time sheets); Mitchell v. City of Phila., Civil Action No. 99-6306, 2010 WL 1370863, at *13 (E.D. Pa. Apr. 5, 2010) (reducing fees on fees by 50% to 15 hours for a fee petition and reply brief). There is simply no justification for charging over 300 hours to: (1) prepare a simple 12-page petition, supplemented by three supporting affidavits and computer-generated billing records, and (2) present rebuttal evidence at the evidentiary hearing. The court notes with interest that plaintiffs' counsel more than doubled its fees on fees

36

between the fee petition and evidentiary hearing. The court finds that the time entries for fees on fees are quite excessive, and the court shall reduce all requested fees on fees by 85%. The court will turn to defendants' remaining objections, but also incorporates its findings in Exhibits 1 and 2.[5]

Defendants object to the following charges specifically related to the fee petition: (1) drafting, reviewing, and revising fee petition from April 1, 2013 to April 12, 2013; (2) reviewing defendants' brief and exhibits; (3) conducting research on defendants' expert, Mr. Toothman; and (4) preparing an unfiled rebuttal. (Doc. 89 at 2-5). The court notes that plaintiffs' counsel expended nearly 40 hours on several drafts of the fee petition and another 50 hours (including block-billings) reviewing defendants' brief and exhibits in opposition to the fee petition. (See Pls.' Hr'g Exs. 19, 21, 22). Plaintiffs offer no explanation for the excessive time entries by plaintiffs' counsel and Ms. Serratelli to prepare a 12-page fee petition containing little legal argument, and to review a clear and concise opposition brief and an expert report. Plaintiffs' counsel spent 8.5 hours researching Mr. Toothman's background and past publications, presumably for cross-examination, and 15.5 hours drafting a "rebuttal" that appears to be simply preparation for the evidentiary hearing; plaintiffs did not submit a reply to defendants opposition brief or any other form of

---

[5] Exhibit 2 is a separate spreadsheet referring to the billing lines from the Reddings' and Mislitsky's additional request for fees on fees. Plaintiffs' request for attorney's fees incurred from April 2013 through August 2013 are attached hereto as Exhibit 3. (See Pls.' Hr'g Exs. 19, 21).

rebuttal.  (See Pls.' Hr'g Ex. 19).  Such preparation for the evidentiary hearing, in

addition to hours of research and internal communications, is excessive.

Defendants object to plaintiffs' request for reimbursement of Ms. Serratelli's

fees because such expert fees are not recoverable for Section 1983 claims.  Pursuant

to 42 U.S.C. § 1988(c), "the court, in its discretion, may include expert fees as part of

the attorney's fee," but only in an "action or proceeding to enforce a provision of [42

U.S.C.] section 1981 or 1981(a)."  42 U.S.C. § 1988(c).  Thus, the award of expert fees

is limited to claims under Sections 1981 and 1981a, and plaintiffs cannot not recover

expert fees for their Section 1983 claims.  See Vassallo v. Fox, No. CIV.A. 04–697,

2005 WL 757353, at *3 (E.D. Pa. April 4, 2005); Dooley v. City of Phila., No. CIV.A.

99-2764, 2002 WL 31053375, at *8 (E.D. Pa. Aug. 30, 2002).  Furthermore, although

expert fees are recoverable for Title VII claims, see 42 U.S.C. § 2000e–5(k), including

for claims under both Title VII and Section 1983, see Scott v. Bell Atlantic Corp.,

No. CIV. A. 93-CV-5970, 1996 WL 608472, *2 (E.D. Pa. Oct 24, 1996), Section

2000e–5(k) is not applicable here because plaintiffs did not prevail on their Title VII

claims as discussed *supra*.

The Third Circuit has observed that non-testifying experts who assisted the

attorneys in preparing their ultimate work product may have a strong claim for

compensation.  See Interfaith Cmty. Org., 426 F.3d at 716; Jenkins, 491 U.S. at 285.

However, courts have generally awarded fees for non-testifying witnesses only

where (1) those individuals are experts that "educate counsel in a technical matter

germane to the suit," Interfaith Cmty. Org., 426 F.3d at 716–17 (citation omitted); (2)

38

those individuals were ready to testify but ultimately their testimony was unnecessary, <u>Paschal v. Flagstar Bank</u>, 297 F.3d 431, 438 (6th Cir. 2002); or (3) those individuals contributed to the attorney's work product, <u>Jenkins</u>, 491 U.S. at 285.

In this case, plaintiffs reference Ms. Serratelli as an expert for the fee petition. However, the court notes that Ms. Serratelli conducted research on attorney's fees despite Mislitsky's research and despite her own expertise. (<u>See</u> Pls.' Hr'g Ex. 22). Ms. Serratelli also revised the fee petition itself. (<u>See</u> Pls.' Hr'g Ex. 22). In addition, Ms. Serratelli submitted an affidavit similar to those of Mr. Greecher and Ms. Wallet regarding the reasonableness of the billing rates. (<u>See</u> Doc. 75-2). Interestingly, neither Mr. Greecher nor Ms. Wallet sought fees for these affidavits. Ms. Serratelli added several statements regarding the difficulties of civil rights cases to support a contingency multiplier, which the court will address *infra*, but her affidavit primarily lends support to the other affidavits included with the fee petition. (<u>See</u> <u>id.</u>) The court finds that the circumstances in this case do not warrant awarding Ms. Serratelli's charges because her billing entries indicate that she was primarily duplicating work done by plaintiffs' counsel rather than explicating a complex fee petition issue.

Moreover, plaintiffs do not claim, and the record does not reflect, that Ms. Serratelli was engaged as counsel to prepare the fee petition. The court may only award attorney's fees to Ms. Serratelli for preparation of the petition to the extent that she stands in the shoes of plaintiffs' counsel. <u>See</u> <u>Shadis v. Beal</u>, 703 F.2d 71, 73 (3d Cir. 1983). There is no indication that Ms. Serratelli attempted to represent

plaintiffs' or replace plaintiffs' counsel in the application for a fee award. Therefore, the court will not award plaintiffs Ms. Serratelli's fees on the basis of her work in preparing the fee petition.

For the reasons set forth above and further delineated in Exhibit 2, the court will award plaintiffs fees on fees for 42.14 hours, resulting in a lodestar amount of $10,154.

### C.     Adjustment of Lodestar

Once the court determines the lodestar, it is presumed to be the reasonable fee; however, the court may reduce or enhance the fee award under a limited set of circumstances. Rode, 892 F.2d at 1183-84; see Hensley, 461 U.S. at 429-30 n.3 (listing twelve factors including "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases"). The party seeking adjustment has the burden of proving that an adjustment is necessary. Rode, 892 F.2d at 1183.

Most pertinent to the case at bar, the court may enhance a lodestar award for the necessity of attracting competent counsel through a contingency multiplier only

"in rare cases." Id. at 1184. To obtain a contingency multiplier, the prevailing party bears the burden of establishing (1) how the market treats contingency fee cases differently from hourly fee cases, (2) the degree to which the relevant market compensates for contingency cases, (3) that the amount determined by the market to compensate for contingency was not more than necessary to attract competent counsel in the relevant market and the case at bar, and (4) that without adjustment for risk, plaintiffs would have faced substantial difficulties in finding counsel in the relevant market. Id. at 1184 (citations omitted).

The court notes that plaintiffs did not specifically request a contingency multiplier in their fee petition; however, plaintiffs allege numerous facts suggesting that the court should enhance the award. (See Doc. 74 ¶¶ 37, 39, 41, 43). Plaintiffs' expert, Ms. Serratelli, opined that a 1.3 multiplier is appropriate in these cases because of the difficulties in pursing civil rights and sexual harassment claims. (Doc. 73-2 at 4-7). Ms. Serratelli's affidavit addressed only one of four Rode factors, the problem of securing competent counsel in civil rights cases. She failed to establish how the market treats contingency cases differently from hourly fee cases and compensates for such cases. See Rode, 892 F.2d at 1184-85. The court concludes that plaintiffs have failed to meet their burden of establishing the factors necessary for a contingency multiplier.

Plaintiffs' counsel also claim that they are entitled to full fees because their efforts resulted in an exceptional recovery for the plaintiffs. (Doc. 74 ¶ 39); see Hensley, 461 U.S. at 435 (stating that an attorney should recover a fully

compensatory fee where plaintiff obtains excellent results and, in some cases of exceptional success, an enhanced award may be justified). Upward adjustment of the lodestar for quality of service is also only appropriate in rare cases where an attorney's work is "so superior and outstanding that it far exceeds the expectations of clients and normal levels of competence." Rode, 892 F.2d at 1184 (citation omitted). The court may consider settlement negotiations in evaluating whether the threshold for performance enhancement has been met. Lohman v. Borough, No. 3:05-CV-1423, 2008 WL 2951070, at *13 (M.D. Pa. July 30, 2008). Plaintiffs' original demand was for $3,000,000 plus attorney's fees and costs and , at the settlement conference, plaintiffs settled for $450,000 plus attorney's fees. (Doc. 78 at 2). Although the settlement was clearly a very good result, the court finds that the lodestar amount is a fully compensatory fee, and plaintiffs have not met the high bar for an upward enhancement for exceptional results.

In the fee petition, and particularly during the evidentiary hearing, plaintiffs' counsel argued that defendants purposefully engaged in delay tactics by requesting revisions to the scheduling order and filing four motions in this case. (Doc. 74 ¶¶ 5-9, 44; Hr'g Tr. 13:20-20:2). Mislitsky testified that defendants' counsel intentionally delayed the scheduling of defendants' depositions. (Hr'g Tr. 14:2-19). The court notes that the relevant exchange of correspondence took place over the winter holidays, and any resulting delays were not unreasonable under the circumstances. (Defs.' Hr'g Ex. 1). Moreover, the record reflects that, despite an April 2 discovery deadline, the first of 17 depositions took place on April 4, 2012. As a consequence of

the sheer number of depositions, Mislitsky concurred in several requests for extension of discovery deadlines. (Hr'g Tr. 15:9-16-6, 17:15-22). Mislitsky also testified about a discovery disagreement over defendants' insurance coverage as evidence from which the court may conclude that defense counsel engaged in a pattern of delay tactics. (Hr'g Tr. 16:8-18:21). The court declines to draw this conclusion. The record reflects that the disagreement over the insurance policy was an isolated dispute and that it did not forestall written discovery or depositions. The parties generally cooperated and took affirmative steps to address any shortcomings in discovery with each other prior to resorting to judicial resources. (See Hr'g Tr. 16:8-18:21. There is simply no indication that defendants intentionally sought to delay the resolution of these cases.

Lastly, defendants argue that the factors identified in Hensley, as a whole, justify a substantially discounted award because plaintiffs' counsel did not have the appropriate experience or skills to handle these straightforward civil rights cases. (Doc. 78 at 31-32). The court finds that plaintiffs' counsel had sufficient experience as trial attorneys to handle these cases. (See Doc. 74 ¶¶ 19-21). The court has already considered the experience of plaintiffs' counsel through calculation of the lodestar amount and no further downward departure is warranted. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010) (stating that the lodestar formula already incorporates most of the relevant factors that determine a reasonable attorney's fee) (citation omitted).

**IV.    Conclusion**

For the reasons discussed herein, the court will grant in part and deny in part plaintiffs' petition (Doc. 74) for attorney's fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k).  An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        November 5, 2013